UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AKMAN FRANCOIS,

    Petitioner,

v.                                                           CASE NO. 6:11-cv-1103-Orl-36GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the amended petition (Doc. No. 8), the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the amended petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 14). Petitioner filed a reply to the response (Doc. No. 16) and an amended reply (Doc. No. 18).

Petitioner alleges three claims for relief in his habeas petition: (1) the trial court erred by denying his motion for judgment of acquittal; (2) trial counsel was ineffective for failing to properly present supporting case law when arguing the motion for judgment of acquittal; and (3) appellate counsel was ineffective for failing to argue that numerous instances of prosecutorial misconduct amounted to fundamental error. For the following

reasons, the petition for writ of habeas corpus is denied.

I.      *Procedural History*

Petitioner was charged by indictment with first degree felony murder with a firearm (count one), attempted robbery with a firearm (count two), and possession of a firearm by a convicted felon (count three). Count three was severed. After a jury trial on counts one and two, Petitioner was convicted as charged. The trial court sentenced Petitioner to a term of life imprisonment for count one and to a concurrent twenty-year term of imprisonment for count two. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. The trial court summarily denied the motion. The appellate court *per curiam* affirmed the lower court's denial of this motion. Petitioner subsequently filed a document entitled "Petition for Belated Appeal" in which he asked the Fifth District Court of Appeal to allow him to file a belated petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. The appellate court granted the petition to the extent that it found the petition for writ of habeas corpus was timely filed. The Fifth District Court of Appeal then denied the petition without discussion. The instant federal petition for writ of habeas corpus follows.

II.     *Legal Standards*

    A.      *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.  *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. Analysis

#### A. *Claims One and Two*

Petitioner alleges that the trial court erred by denying his motion for judgment of acquittal as to the murder charge where there was no direct evidence that he committed the crime (Doc. No. 1 at 5). Petitioner raised this claim on direct appeal, and the Fifth District Court of Appeal affirmed *per curiam* (App. F).

5

In claim two, Petitioner contends trial counsel was ineffective for failing to properly present supporting case law when arguing the motion for judgment of acquittal (Doc. No. 1 at 6). Petitioner raised this claim in his Rule 3.850 motion, arguing that counsel should have cited to *Crain v. State*, 894 So. 2d 59 (Fla. 2004) and other cases for the proposition that when the only proof of guilt is circumstantial evidence, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of guilt (App. H). The trial court summarily denied this claim, finding there was no reasonable probability that it would have ruled differently on the motion for judgment of acquittal if counsel had cited to the aforementioned case (App. I). The Fifth District Court of Appeal affirmed *per curiam* (App. L).

In Florida, the "purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence presented by the [S]tate." *Harris v. State*, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007) (citation omitted). When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

To convict Petitioner of first degree felony murder, the State had to prove that (1)

the victim is dead, (2) the death occurred as a consequence of and while the defendant was attempting to commit robbery, and (3) the defendant was the person who killed the victim or the victim was killed by someone other than the defendant but the defendant and the other person were principals in the attempt to commit a robbery. Fla. Std. Jury Instr. (Crim) 7.3; § 782.04(1)(a)(2), Fla. Stat. (2005). Attempt is defined as (1) doing some act toward committing the crime that goes beyond thinking or talking about it and (2) the perpetrator would have committed the crime except that someone prevented him from committing the crime or he failed to commit the crime. Fla. Std. Jury Instr. (Crim) 5.1; § 777.04(1), Fla. Stat. (2005). Robbery is defined as the taking of money or property from a person's custody with the intent to permanently or temporarily deprive the person of the money or property, and while in the course of the taking, there is the use of force, violence, assault, or putting in fear. § 812.13(1), Fla. Stat. (2005).

Testimony was presented at trial that Mark Ward ("Ward"), a two-time convicted felon, and Karl Morgan ("Morgan"), also a convicted felon, left Yolanda Hayward's ("Hayward") home, located in the Ivey Lane Apartments in Orlando, Florida, late in the evening of June 21, 2005, to purchase alcoholic beverages (App. B at 456-60). Ward was carrying approximately $14,000 in cash on his person, and Morgan, Hayward, and Shalonda Williams were aware that he possessed the money. *Id.* at 454. According to Ward, when they returned to the apartment, Hayward's porch light was no longer on, and Ward thought "something was off." *Id.* at 461. Morgan dropped Ward off, and as Ward began to walk toward the apartment, three men jumped out of the bushes, pointed objects

that appeared to be firearms at him, and told him to get down. *Id.* at 465, 467. Ward identified one of the men as the victim, Michael Ashley, and another man as Petitioner. *Id.* at 466. Instead of complying with their demands, Ward ran away, stating, "Ya'll not robbing me." *Id.* at 471. As he ran away, Ward heard two gunshots. *Id.* at 472. Ward eventually ran into someone's backyard and asked the homeowners to call the police. *Id.* at 474.

Morgan testified that he drove Ward back to Hayward's house after stopping at the liquor store. *Id.* at 435. As Ward got out of the vehicle, Morgan heard two gunshots. *Id.* at 436. Ward "took off running" and Morgan drove away, parked the car, and ran back to the scene. *Id.* at 436-37. Morgan observed the victim lying in the street. *Id.* at 441. Morgan did not see who had fired the shots. *Id.* Morgan knew Petitioner, who is also known as "Sauce," from the neighborhood, but he did not see Petitioner until after the shooting, at which time Petitioner asked him what had happened and acted nervous. *Id.* at 443.

Westley Brand ("Brand"), Hayward's son and the victim's cousin, witnessed the shooting. *Id.* at 494-95. At trial, Brand testified that he knows Petitioner because Petitioner lives in the apartment next door. *Id.* at 498-99. Brand did not see Petitioner at the time of the shooting. *Id.* Brand was impeached with his statement to police in which he identified Petitioner as the shooter. *Id.* at 500-01. Brand explained that when he identified Petitioner as the shooter he was "just going off of what other people told him" and was scared. *Id.* at 501-03. Brand testified that he did not know who the shooter was but heard someone yell, "get on the ground, put the money on the ground." *Id.* at 506. On cross examination, Brand

8

admitted that the victim was attempting to commit a robbery upon Ward. *Id.* at 511.

Derek Rozier ("Rozier") also witnessed the shooting. *Id.* at 518. Rozier initially picked Petitioner out of a lineup as the perpetrator of the crime. *Id.* at 518-20. However, at trial Rozier testified that he did not see the shooter. *Id.* at 521. Rozier also stated that he was aware that the victim and Petitioner were planning to commit a robbery. *Id.* Rozier was impeached with his statement to police, wherein he stated that he saw Petitioner point a gun at Ward and later observed Petitioner go into his apartment, change his clothes, and leave the area. *Id.* at 523-25. Glen Gause, a retired detective for the Orlando Police Department, testified that both Brand and Rozier identified Petitioner as the shooter in a photographic lineup. *Id.* at 563-64.

Petitioner's girlfriend, Christina McCode ("McCode") testified that on June 21, 2005, she was standing outside when she heard two gunshots. *Id.* at 655. Petitioner was also standing outside near the garbage cans when the shots occurred; however, McCode could not see Petitioner at that time. *Id.* at 656. McCode stated that Petitioner could not have committed the crimes because she did not see him with a firearm before or after the shooting. *Id.* Petitioner, a convicted felon, testified that he did not shoot the victim. *Id.* at 731. Petitioner also stated that he did not threaten any witnesses in this case. *Id.* at 737.

The State called Terry McCullough ("McCullough") to testify as a rebuttal witness. McCullough, an inmate at the Orange County Jail, was transported along with Petitioner and Angel Ramos from the trial court to the Jail during the instant trial. *Id.* at 748-49. McCullough is a former commercial trial lawyer who was convicted of misdemeanor fraud

and sentenced to six months in jail. *Id.* at 747-48. McCullough testified Petitioner told Ramos that through his own efforts or through the efforts of other people, two witnesses were going to recant their testimony and testify Petitioner did not shoot the victim. *Id.* at 752-54. McCullough stated on cross examination that he had not received anything in exchange for his testimony. *Id.* at 757.

It is undisputed that the victim died due to a gunshot wound. Although Petitioner contends that there was no direct evidence that connected him to the felony murder, the Court finds there is sufficient evidence to support the conviction in this case. There was testimony that the victim and Petitioner were attempting to commit a robbery on Ward and when Petitioner shot at Ward, the bullet hit the victim. While two witnesses recanted their statements to police, the evidence demonstrates that both Brand and Rozier initially identified Petitioner as the shooter. Moreover, additional evidence suggests that Petitioner intimidated or threatened these witnesses, resulting in their recantations. After viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner guilty of felony murder with a firearm.

Further, trial counsel's failure to cite to case law when arguing the motion for judgment of acquittal did not result in prejudice. The trial court properly allowed the jury to determine whether the evidence at trial was inconsistent with every reasonable hypothesis of innocence. *See Caylor v. State*, 78 So. 3d 482, 494 (Fla. 2011) ("'[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any

reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine . . . .'") (quoting *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002)); *Crain*, 894 So. 2d at 71 ("'The fact that the evidence is contradictory does not warrant a judgment of acquittal since the weight of the evidence and the witnesses' credibility are questions solely for the jury.'") (quoting *Long v. State*, 689 So. 2d 1055, 1058 (Fla. 1997)). Moreover, contrary to Petitioner's assertions, the evidence presented at trial was inconsistent with any reasonable hypothesis of innocence. Thus, the trial court properly denied the motion for judgment of acquittal. Accordingly, claims one and two are denied pursuant to § 2254(d). *See Shelton v. Sec'y*, 691 F.3d 1348, 1353 (11th Cir. 2012) (holding a state court's *per curiam* affirmance is an adjudication on the merits and entitled to deference pursuant to section 2254(d)).

    B.    *Claim Three*

Petitioner claims appellate counsel was ineffective for failing to argue several instances of prosecutorial misconduct on direct appeal (Doc. No. 1 at 8, 11). Petitioner cites to approximately ten allegedly improper comments made by the prosecutor during trial (Doc. No. 1 at 12-21). Petitioner raised these claims in his amended state habeas petition filed with the appellate court (App. P). The Fifth District Court of Appeal denied the petition without discussion (App. T).

Claims of ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under *Strickland*. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). Appellate counsel need not brief issues reasonably considered to be

without merit. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). In order to establish prejudice, the Court must first review the merits of the omitted claim. *See Heath*, 941 F.2d at 1132. Counsel's performance will be deemed prejudicial if the Court finds that "the neglected claim would have a reasonable probability of success on appeal." *Id.*

Petitioner first argues that the State improperly cross-examined him based on an off-the-record deposition and improperly suggested that witnesses recanted their testimony because he threatened or coerced them (Doc. No. 1 at 12-13). Prior to Petitioner's testimony, the attorneys had an off-the-record conversation with Ramos which the attorneys later summarized on the record (App. B at 708). Ramos told the attorneys that Petitioner admitted shooting the victim and also stated that he would kill anyone who testified against him. *Id.* at 720. Ramos did not testify at trial. During Petitioner's testimony, the State asked Petitioner whether he told Ramos that any person who testified against him would be killed. *Id.* at 741. Defense counsel objected to this statement and the trial court sustained the objection. *Id.*

First, the Court notes that the trial court sustained the defense's objection to this testimony, therefore, there is no indication that the jury considered the improper statement. Moreover, although the State's question may have been improper, Petitioner has not demonstrated that the instant claim would have been successful on appeal. There was

12

substantial evidence against Petitioner, and McCullough testified in the State's rebuttal case that he heard Petitioner tell Ramos that through his own efforts and the efforts of others he had pressured several witnesses into recanting their testimony. Thus, there is no reasonable probability that this claim would have been successful if raised on direct appeal.

Additionally, to the extent Petitioner argues that the prosecutor made improper comments during closing argument related to Petitioner's alleged threats to witnesses, the Court concludes that these comments were not improper. Florida courts allow attorneys wide latitude during closing arguments. *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999). The Florida Supreme Court has also stated that "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." *Id.* Appellate counsel was not deficient for failing to raise this claim because any comments made by the prosecutor regarding Petitioner's threats to witnesses were not improper. The State was merely commenting on evidence submitted at trial through the testimony of McCullough and asking the jury to draw a reasonable inference that Petitioner threatened several witnesses prior to trial. Thus, there is no indication that these comments rendered the trial fundamentally unfair.

Petitioner further argues that the State improperly invoked the authority of its office to persuade the jury to convict him. At the beginning of closing argument, the prosecutor stated the following:

> And the credibility of those witnesses -- and what was apparent in this particular case -- that each and every witness, mysteriously, who had identified [Petitioner], gone to the extent of picking the shooter out of a photo

13

> lineup, with six like individuals, who had never wavered or vacillated about what their statement was going to be, all of a sudden got on the stand -- and again, that's why your common sense isn't left at the door -- any you [sic] could tell, at this particular point in time, that these witnesses were in fear, that these witnesses were afraid, and these witnesses had been gotten to.
>
> It probably didn't take that last rebuttal witness, based on your own common sense and judgment, for you to understand exactly what the State saw in this case and exactly what was going on.

(App. B at 774). These statements were permissible comments on the evidence. The State was not using the authority of its office or testifying as an expert witness but instead was asking the jury to use its common sense to infer that Petitioner had engaged in witness tampering. The Court concludes that these comments were not improper, and appellate counsel was not deficient for failing to make this argument on appeal.

Next Petitioner asserts that the prosecutor improperly attacked his credibility during closing arguments. Petitioner takes issue with the follow comments:

> He again offered that there's reasonable doubt. No reason for the defendant to lie. This will be the first person, ever, who committed a murder, and got up on the witness stand and said he didn't do it. There would be no reason for somebody, who can be convicted of murder, to say that he didn't do it. Ladies and gentleman, you do not leave your common sense at the door in this particular case.

*Id.* at 827. The State argued that the jury could infer Petitioner's testimony was not truthful based on the evidence presented. These comments were not improper. Federal courts have held that "a petitioner is not deprived of due process where a prosecutor asserts that a defense witness lied, including the defendant, where such statements were reasonable inferences drawn from the physical evidence and witness testimony." *Wilson v. McNeil*, No.

14

08-23016-Civ-LENARD, 2010 WL 6405687, at *5 (S.D. Fla. Feb. 17, 2010). Accordingly, appellate counsel did not act deficiently by failing to raise this claim nor did any prejudice result from counsel's actions.

Petitioner also contends that the prosecutor made numerous misstatements of the facts and testimony. To the extent the prosecutor did misstate the facts or testimony, Petitioner cannot show that appellate counsel's failure to raise this issue on direct appeal resulted in prejudice. Closing arguments are not evidence, and the state court instructed the jury as such. *Id.* at 772 ("Please remember what the attorneys say is not evidence. However, do listen closely to their arguments; they are intended to aid you in your understanding of the case"); *Conahan v. State*, 844 So. 2d 629, 639-40 (Fla. 2003) (concluding improper statements made by the prosecutor were harmless error because opening and closing arguments are not evidence). Moreover, the trial court instructed the jury that it was to consider only the evidence introduced at trial in order to determine guilt (App. B at 838). A jury is presumed to follow instructions. *See Ruiz v. Sec'y, Dep't of Corr.*, 439 F. App'x 831, 834 (11th Cir. 2011). Therefore, the instant claim would not have been meritorious had it been raised on direct appeal.

Petitioner alleges that the prosecutor improperly invaded the province of the jury when he stated that the "highest charge is what's supported by the evidence" and argued that all three elements of felony murder had been proven (App. B at 788, 791). In making these statements, the prosecutor was asserting that the evidence supported a conviction for first degree felony murder with a firearm. This statement was not improper because the

15

State was arguing that the evidence presented at trial was sufficient to support a conviction. Appellate counsel did not act deficiently by failing to raise this claim on direct appeal nor did counsel's actions result in prejudice.

The Court has reviewed all of the prosecutor's statements and concludes that counsel's failure to raise these matters on appeal did not amount to prejudice because there is no reasonable probability that the claims would have been successful on appeal. Accordingly, claim three is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Amended Petition for Writ of Habeas Corpus filed by Akman Francois (Doc. No. 8) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 3rd day of June, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 6/3
Counsel of Record
Akman Francois